Myers, J.
 

 This is an appeal from an order of the Public Utilities Commission holding that D. T. Orn
 
 *439
 
 doff, appellant, engaged in the business of supplying natural gas to a natural gas company, is, by virtue of Sections 614-2 and 614-2a, General Code, a public utility. The facts are not in dispute. The record reveals that appellant is the producer of natural gas from thirty-nine wells on nineteen leasehold estates, all of which gas is sold to The Ohio Fuel Gas Company, which sells and distributes it to consumers. The business of appellant obviously comes within the definition of a natural gas company as defined by Section 614-2 and therefore a public utility as defined by Section 614-2a, General Code.
 

 Appellant, however, contends that his business is not in fact a public utility and that under the Constitution the Legislature cannot by “mere legislative fiat” make it a public utility. He contends that the statute as applied to his business is unconstitutional. In brief, the appellant contends that Sections 614-2 and 614-2u, General Code, insofar as they attempt to define and declare a business, such as appellant conducts, to be a public utility, are void and an unwarranted exercise of legislative power.
 

 Such contention of the appellant requires an examination of the character of the product sold by him, as well as the character and extent of his business. Section 614-2, General Code, specifically excludes from the operation of the statute situations where the gas is sold by the producer from wells drilled on land owned in fee by himself or where the principal use of such land by such producer is other than the production of gas. Appellant does not come within these exceptions. The record reveals that he does not own the land in fee upon which the gas wells are drilled and that the principal use of the land by appellant is for the production of gas. The record reveals that appellant is and has been for a number of years in the business of producing and selling gas to The Ohio Fuel Gas Company, which in turn sells and distributes such natural gas to
 
 *440
 
 consumers. We have for consideration, therefore, a situation where appellant is in the business of producing and selling natural gas exclusively to another natural gas company which sells and distributes same to consumers. In the light of such facts, was the order of the Public Utilities Commission unlawful or unreasonable?
 

 Section 10 of Article XII of the Constitution of Ohio is as follows: “Laws may be passed providing for excise and franchise taxes and for the imposition of taxes upon the production of coal, oil, gas and other minerals.” By such provision in the Constitution the people of Ohio recognized that the production of such minerals might be taxed as in the judgment of the Legislature the public welfare demanded. As the conditions and needs of society grow more complex it is recognized that essential products, like coal, oil and gas, under certain conditions affect the public welfare, and, therefore, the public interest. It may, therefore, be said that where the production and sale of gas is affected with a public interest it is subject to regulation and control as a public utility. The history and growth of the natural gas industry has been such that certain individuals and corporations gradually secured exclusive control of the sale of natural gas in certain communities. In the distribution of such product it became necessary for such distributors to obtain certain franchises from political subdivisions, none of which, however, is utilized by appellant in the instant ease. All gas produced by appellant is sold and delivered at meters on the premises to one purchaser only. It is contended by Orndoff that since he does not transport the gas, .since he does not hold himself out to the public generally as a producer of gas, and since he does not sell the gas to consumers directly, he is not and cannot be considered as a public utility. However, the relationship existing between appellant and the public utility to which he sells his product is
 
 *441
 
 such that the public does have an interest therein for the reason that the rate of purchase in such transaction directly affects the rate of purchase to the ultimate consumer.
 

 The public has an interest in the production and sale of natural gas for the reason that it is a product of nature, transitory and not necessarily confined to any one particular location underground and to that extent a heritage to all mankind. There is not only a public interest in its production and sale generally, as a business, but also in its conservation for future generations. Such public interest has been manifested and recognized for years in statutes forbidding the waste thereof by improper plugging of abandoned gas wells and other like measures to conserve the supply. Even though a person owns his own gas wells he may not deliberately waste the supply. Sections 898-187,. 898-188, 898-189 and 6317, General Code. The public has an interest in natural gas as a product of nature, largely on account of the fact that underground it is not confined to any particular location but may underlie large regions of territory involving many different surface properties or leases.
 

 Somewhat in the same manner that government is interested in the conservation of gas in its natural state underground, so also is it interested in the production and sale of gas where the public interest is involved. Even as the forces of nature were primarily responsible for the production of natural gas, so also is the public generally responsible for a market for the sale thereof. Especially is this true where the producer, as in the instant case, sells directly to the distributor. The rate to The Ohio Fuel Gas Company directly affects the rate to the consumer.
 

 In this connection appellant refers to the case of
 
 Ohio Mining Co.
 
 v.
 
 Public Utilities Commission,
 
 106 Ohio St., 138, 140 N. E., 143, as well as the case of
 
 Southern Ohio Power Co.
 
 v.
 
 Public Utilities Commis
 
 
 *442
 

 sion,
 
 110 Ohio St., 246, 143 N. E., 700, in support of his contention that his business should not be considered a public utility. In answer to such contention it is pertinent to observe that Section 614-2, General Code, was amended in 1933 so as to include within the definition of a public utility any one ‘ ‘ engaged in the business of supplying natural gas to gas companies or to natural gas companies within this state.” This provision is different in scope from the definition of an electric light company in effect at the time the foregoing cases were decided. This same section, in defining an electric light company, reads as follows: “Any person or persons, firm or firms, co-partnership or voluntary association, joint stock association, company or corporation, wherever organized or incorporated; * * * When engaged in the business of supplying electricity for light, heat or power purposes to consumers within this state is an electric light company. ’ ’ When Section 614-2, General Code, was amended in 1933 in reference to natural gas companies, this provision with reference to an electric light company was not changed in any way. The distinction between these two definitions was no doubt based upon the fact that electricity is a man-made product while natural gas is a product of nature and its supply therefore somewhat limited.
 

 The underlying reasons for the amendment of the statute in reference to natural gas companies need no extensive discussion. It is common knowledge that distributing companies like The Ohio Fuel Gas Company purchase natural gas from independent producers like appellant. In order for the Public Utilities Commission to have adequate information to pass upon rates to be charged by distributing companies like The Ohio Fuel Gas Company, it is necessary to know the price or prices paid by such utilities to independent producers. To state that such information could be secured by subpoena and testimony in rate proceedings is not a valid answer for the reason that government has
 
 *443
 
 learned that such proceedings, even with access to the reports of data which appellant -herein refused or failed to make, are tedious and sometimes unduly delayed. Appellant is in the business of supplying natural gas to a utility that sells it to the public. His market is made possible by the ultimate consumer who is entitled to purchase at a fair and reasonable rate. Such fair and reasonable rate cannot be reasonably and seasonably ascertained without reports, etc., from appellant and other like producers as required by law. In view of the foregoing considerations we are unable to say that the Legislature exceeded its constitutional limitations when it enacted the particular provisions of Sections 614-2 and
 
 614-2a,
 
 General Code, here involved. The constitutional question was also raised in the case of
 
 Industrial Gas Co.
 
 v.
 
 Public Utilities Commission, ante,
 
 408. Inasmuch as complainant there was found to be a public utility in fact, irrespective of the statutory definition involved, the. constitutional question was not reached.
 

 There is nothing in the record to indicate how much gas is produced by appellant from the thirty-nine wells on the nineteen different leasehold estates and sold to The Ohio Fuel Gas Company. For aught that appears in the record the thirty-nine wells might produce enough gas to serve an entire community. Much was said in oral argument about extreme illustrations of a producer having only one well or a thousand such wells. Suffice to say that we are not required at this time to review any other than the instant proceeding. Under Section 544, General Code, this court is required to affirm the order of the commission unless such order be found unlawful or unreasonable. "We are unable to say that the instant order was either unlawful or unreasonable for, under the admitted facts, the commission, by virtue of Sections 614-2 and 614-2&, General Code, could not find otherwise than that appellant in his business was. a public utility, and, therefore re
 
 *444
 
 quired to make the necessary reports, etc. Neither are we able to say that the statutes as applied to the business of appellant are not a valid exercise of legislative power.
 

 The order of the Public Utilities Commission will be affirmed.
 

 Order affirmed.
 

 Weygandt, O. J., Zimmerman, Williams and Matthias, JJ., concur.
 

 Day and Hart, JJ., dissent.